**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDREW KEMMERER,** | : | **Civil No. 3:25-CV-562** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FRANK BISIGNANO,**[1] | : | **(Magistrate Judge Carlson)** |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

## I. Introduction

Social Security disability decisions are guided by a familiar five-step paradigm. For claimants, the most demanding of these steps is Step 3. In order to prevail at Step 3, a claimant must show that he or she meets all of the criteria of a regulatory listing which would define the claimant as *per se* disabled. However, to qualify for benefits at Step 3 by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, a plaintiff bears the burden of

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. § 416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

The instant case illustrates how demanding this burden of proof can be. The plaintiff in this case, Andrew Kemmerer, has described the severity of his symptoms in extreme, and disabling, terms but his activities of daily living suggest some capacity for productive labor. Further, while the clinical record confirms the existence of multiple significant impairments, it is far more equivocal regarding whether those mental and physical conditions are completely disabling. Moreover, no medical expert who examined this medical record opined that his clinical history established *per se* disability. Rather, there was a medical opinion consensus that Kemmerer could accomplish a limited range of light work involving simple tasks. After considering this evidence, the ALJ denied Kemmerer's claim finding that he could perform some work that existed in significant numbers in the national economy.

Kemmerer now challenges this decision, arguing that the ALJ erred at Step 3 in evaluating the medical opinion evidence, in assessing the severity of his symptoms and in failing to recognize that the plaintiff was *per se* disabled. With

Kemmerer's principal argument couched in terms of a Step 3 error, the plaintiff faces a doubly demanding burden in this case. First, in order to succeed at Step 3, he must show that he met all of the pertinent listing criteria. Further, the plaintiff must carry this burden of proof and persuasion in the face of a highly deferential "substantial evidence" standard of review, which is limited by the Supreme Court's mandate that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 587 U.S. 97, 102–03, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). Under this standard of review, we are obliged to affirm the decision of the administrative law judge (ALJ) once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different

conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)).

Here, the ALJ's decision, read as a whole, adequately assessed the plaintiff's impairments, and provided a substantial basis grounded in the evidence for the conclusion that Kemmerer was not *per se* disabled. Therefore, mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's Step 3 findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II. Statement of Facts and of the Case

### A. Introduction

The plaintiff, Andrew Kemmerer, filed an application for disability insurance and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act on March 16, 2022. (Tr. 18). In both applications, the claimant alleged an onset of disability beginning April 14 2020. (Id.) According to Kemmerer he was completely disabled due to an array of impairments including adjustment disorder with depressed mood, mood disorder, major depressive disorder, generalized anxiety disorder with panic attacks, unspecified bipolar disorder, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder

(PTSD), unspecified psychosis, and history of postherpetic neuralgia with polyneuropathy. (Tr. 21). Kemmerer was born on March 11, 1989, and was 31 years old on the alleged disability onset date which is defined as a younger individual under the Commissioner's regulations. (Tr. 32). At the time of his disability application Kemmerer had at least a high school education and prior employment as a machine operator. (Id.)

**B. Clinical History**

With respect to Kemmerer's physical and emotional impairments, the medical record is equivocal. That record undoubtedly documented that these impairments were significant and imposed limitations on the plaintiff. However, substantial evidence also suggested that these conditions were not totally disabling, and Kemmerer retained the ability to perform some work.

Between 2020 and 2024, Kemmerer was seen by three treating sources. With respect to his vision concerns, Kemmerer treated with Progressive Vision Institute. (Tr. 418-430, 598-620). The Geisinger Health System provided Kemmerer's primary care, which included neurological and gender affirming treatment. (Tr. 450-499, 631-643, 975-1261). REDCO Group, in turn, provided psychological support and counseling services to Kemmerer. (Tr. 564-582, 684-700, 768-891).

Treatment notes and clinical records provided by these caregivers reflected fluctuations in Kemmerer's physical and emotional state but, read as a whole, these contemporaneous notes did not describe a persistent and wholly disabling level of impairment. At the outset, ophthalmology records characterized Kemmerer's visual disturbances as "mild" to "moderate," (tr. 418, 430, 601), and an April 2023 consultative examination concluded that he had "very good vision without visual field loss." (Tr. 749).

Clinical notes from the Geisinger Health System, which provided general healthcare to Kemmerer, consistently noted that he was diagnosed with anxiety and depression, which was related to other presenting conditions. (Tr. 450-499, 631-643, 975-1261). With respect to his emotional impairments, there is no record of hospitalization or emergency interventions during the relevant time period. Instead, while these treatment records documented fluctuations in his emotional state between 2020 and 2024, the longitudinal treatment history revealed many instances where caregivers reported that Kemmerer was fully oriented, displayed a normal mood, affect and judgment, and denied any self-destructive impulses. (Tr. 450, 452, 459, 463, 467, 470, 475, 481, 490, 631, 639, 641, 1017, 1095, 1112, 1131, 1142, 1149, 1152, 1209, 1219, 1231, 1242, 1265). These clinical notes also indicated that Kemmerer reported some relief from his depression and anxiety through counseling

and medication. (Tr. 450, 458, 975, 1015, 1110). Yet in other less frequent instances Kemmerer reported depression and anxiety without any suicidal ideation, (tr. 456, 476, 493, 992, 1042, 1058, 1094, 1110), and on a few occasions acknowledged intermittent thoughts of self-harm without any plan for injurious behavior. (Tr. 456, 990). As a general matter, Kemmerer denied experiencing visual hallucinations while acknowledging some audio delusions. (Id.)

REDCO's counseling records, which spanned from 2021 through 2023, presented a similar picture of depression and anxiety which fluctuated over time, but was often described in terms which were not completely debilitating. Kemmerer was typically described as fully oriented, and many of his clinical observations were described as normal. (Tr. 572, 574, 575, 578, 582, 686-87, 689-90, 696-700, 778). His mood was often described as positive, happy, pleasant, confident and friendly. (Tr. 781-90, 793, 798-804, 815-42, 857, 858, 862, 867-76, 880, 885-88). These positive moods were punctuated by instances in which Kemmerer reported depression and anxiety but denied any thoughts of self-harm. (Tr. 790-91, 804-06, 812-14, 859-61, 881, 890). In a number of instances, Kemmerer related that these episodes were related to frustrations when he was unable to obtain work or exereinced delays in the disability process. (Id.) Finally, on a couple of isolated

occasions Kemmerer voiced thoughts of self-harm without any planning. (Tr. 866, 879).

**C. Activities of Daily Living**

While the plaintiff described his impairments as totally disabling at his administrative hearing, stating that he presented a danger to himself and others, (tr. 52), Kemmerer's activities of daily living suggested that he retained the ability to perform light work entailing simple tasks despite his emotional and physical limitations. Kemmerer prepared simple meals, did light gardening and cleaning, could handle shopping and manage his finances, and enjoyed hobbies, arts, and video gaming. (Tr. 63, 297-300). He reported that he got along "relatively well" with authority figures and had never been fired due to interpersonal conflicts. (Tr. 300).

**D. The Medical Opinion Evidence**

With respect to one of the central issues in this appeal, the question of whether Kemmerer's impairments satisfied any listing requirements at Step 3, the medical opinion evidence is notable in at least one respect. While one opining expert identified a single, specific area where Kemmerer faced a marked impairment, no expert stated that he met the listing requirement of marked impairments in two broad spheres of workplace functioning or an extreme impairment in at least one area of

functioning. Thus, none of the expert opinions supported a Step 3 finding of disability for the plaintiff.

With respect to Kemmerer's physical impairments, two state agency experts concluded that he retained the ability to perform light work. (Tr. 82-84, 106-08). A consulting examining physician, Dr. Ziba Monfared, found that Kemmerer was largely unlimited in his ability to meet the physical demands of the workplace, (tr. 723-32), and an April 2023 ophthalmology examination determined that he had "very good vision without visual field loss." (Tr. 749).

As for Kemmerer's emotional impairments, three medical sources opined concerning how these conditions affected his ability to meet the emotional demands of the workplace. Two of these opinions were provided by state agency experts. At the outset, on May 20, 2022, Dr. Dawn Long found based upon an examination of Kemmerer's medical records that he experienced mild impairment understanding, remembering, or applying information and was moderately impaired in terms of interacting with others, concentration, persistence, or pace, and adapting or managing himself. (Tr. 80). Dr. Long therefore concluded that Kemmerer did not meet listing requirements but rather could perform simple tasks. (Tr. 84-85).

On April 13, 2023, Dr. Kerry Brace reached similar conclusions concerning Kemmerer's mental functioning and also concluded that he was not totally disabled.

Like Dr. Long, Dr. Brace found that Kemmerer was mildly impaired in understanding, remembering, or applying information and was moderately impaired in terms of interacting with others, concentration, persistence, or pace, and adapting or managing himself. (Tr. 104). According to Dr. Brace:

> The claimant's basic memory processes are intact. The claimant can understand, retain, and follow simple instructions (i.e., perform one and two step tasks). The claimant can make simple decisions and would not require special supervision in order to sustain a work routine. The claimant can perform simple, routine, repetitive tasks in a stable environment.
>
> The claimant is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene. The claimant is capable of asking simple questions and accepting instruction. The claimant is able to interact appropriately with the general public. The claimant is able to get along with others in the workplace without distracting them. The claimant can exercise appropriate judgment in the workplace.[2]

(Tr. 109).

On March 3, 2023, Dr. Anne Miller conducted a consultative examination of Kemmerer. (Tr. 708-13). Dr. Miller's examination yielded results similar to those of the state agency experts, although Dr. Miller differed from the state agency sources

---

[2] The state agency experts' opinions also contained some casual references to one-to-two step tasks, a limitation which has been found to be legally problematic in the past if it is rejected without analysis by an ALJ, however, no such error occurred here since the ALJ addressed, and discounted, this specific limitation in the decision denying this claim.

in some elements of her assessment. According to Dr. Miller, Kemmerer's speech was fluent, he was coherent and goal-oriented, his attention and memory were intact, and he displayed average to above average cognitive functioning. (Tr. 711). Dr. Miller concluded that Kemmerer exhibited no limitations understanding, remembering and carrying out simple or complex instructions. (Tr. 713). The doctor found that Kemmerer was markedly impaired in one specific area of functioning--interacting appropriately with the public. However, with respect to interacting with co-workers and supervisors he was only mildly impaired. (Tr. 714). Dr. Miller opined that Kemmerer would be moderately impaired adjusting to workplace change. (Id.)

It was against this medical backdrop that Kemmerer's case came to be heard by an ALJ.

**E. The ALJ Decision**

A hearing was conducted in this case on February 21, 2024, at which Kemmerer and a vocational expert testified. (Tr. 41-76).[3] In his testimony, Kemmerer described the severity of his symptoms in extreme terms, reporting that

[3] Notably, at the hearing the plaintiff's counsel acknowledged that "this may be a step five analysis," (tr. 48), a concession which seems at odds with the plaintiff's current position on appeal that he should prevail as a matter of law at Step 3.

he was a danger to himself and others due to his emotional and physical limitations. (Tr. 52). The Vocational Expert, in turn, addressed a series of five hypotheticals posed by the ALJ, finding in four of these scenarios that there was work in the national economy Kemmerer could perform. (T. 70-74). Only in a scenario where Kemmerer's impairments left him off-task for 30% of the workday did the Vocational Expert conclude that the plaintiff would be totally disabled. (Id.)

Following this hearing, on April 10, 2024, the ALJ issued a decision in Kemmerer's case denying this application for benefits. (Tr. 15-34). In that decision, the ALJ first concluded that Kemmerer met the insured status requirements of the Social Security Act through December 31, 2025, and had not engaged in substantial gainful activity since April 14, 2020, the alleged onset date. (Tr. 20). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Kemmerer had the following severe impairments: adjustment disorder with depressed mood, mood disorder, major depressive disorder, generalized anxiety disorder with panic attacks, unspecified bipolar disorder, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), unspecified psychosis, and history of postherpetic neuralgia with polyneuropathy. (Tr. 21).

At Step 3, the ALJ determined that Kemmerer did not have an impairment or combination of impairments that met or medically equaled the severity of one of the disability listing impairments. As the ALJ explained:

> The claimant's impairments do not meet the requirements of listing 11.14 because the record is devoid of disorganization of motor function in two extremities that results in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use of the upper extremities or marked limitation in physical functioning and in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. The consultative medical examiner opined that the claimant does not require the use of an assistive device for ambulation and there is no evidence of ongoing use of an assistive device for ambulation (Exhibit 11F). The consultative examination also reflects normal gait and stance, no difficulty walking on his heels and toes, the ability to rise from a chair without difficulty, intact hand and finger dexterity, normal overall range of motion, and full motor strength throughout, including bilateral grip strength (Exhibit 11F).
>
> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.03, 12.04, 12.06, and 12.15. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering or applying information, the claimant has a mild limitation. The claimant reports that he does not need

reminders to go places or care for his personal hygiene (Exhibits 4E, 12E). Additionally, he plays video and board games, shops, prepares basic meals, and drives occasionally (Exhibits 4E, 10F, 12E, 15F, 16F, 17F, Testimony). Moreover, treatment records reflect that he was involved in candle making, gardening, and that he was trying to become self-taught in tattooing (Exhibits 10F, 15F, 17F). The consultative examination reflects coherent and goal directed thought process with normal thought content, intact memory skills, average to above average intellectual functioning, and appropriate general fund of information (Exhibit 10F). No treating, examining, or reviewing source opined that the claimant has greater limitation in this functional domain (Exhibits 2A, 4A, 5A, 8A, 10F). As such, the evidence of record does not support more than mild limitation in understanding, remembering, or applying information.

In interacting with others, the claimant has a moderate limitation. The claimant alleges difficulties getting along with others and that he is a danger to others, as he receives signs from the universe telling him to hurt other people (Exhibits 4E, 12E, Testimony). However, he lives with a friend and that he has some other friends with whom he socializes (Exhibits 15F, 16F, 22F, Testimony). He has never been fired from a job for problems getting along with others (Exhibits 4E, 12E). Additionally, treatment records reflects that he has online friends (Exhibit 15F). A friend of his also eventually became a peer support worker for him who takes him to a local coffee shop and shopping (Testimony). The consultative psychological examination describes cooperative attitude, adequate manner of relating, satisfactory grooming and hygiene, appropriate eye contact, fluent and clear speech, and normal thought content (Exhibit 10F). While treatment records generally reflect variations in mood and affect, they also generally describe the claimant as friendly, cooperative, and pleasant with good eye contact (Exhibits 4F, 9F, 15F, 16F, 17F). He also reported that he usually gets along pretty well with others, but that his social battery will drain (Exhibit 16F, p. 3). The consultative psychological examiner opined that the claimant has marked limitation interacting appropriately with the public, but mild limitation interacting appropriately with supervisors and coworkers and the State agency psychological

consultants opined that the claimant has moderate limitation in this functional domain (Exhibits 2A, 4A, 5A, 8A, 10F). As such, the evidence of record does not support more than moderate limitation in interacting with others.

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant reports that he is unable to pay attention for very long, sometimes for only seconds and that he does not complete tasks (Exhibit 12E). However, he plays video and board games, shops, prepares basic meals, and drives occasionally (Exhibits 4E, 10F, 12E, 15F, 16F, 17F, Testimony). Additionally, treatment records reflect that he was involved in candle making, gardening, and that he was trying to become self-taught in tattooing (Exhibits 10F, 15F, 17F). The consultative examination reflects intact attention and concentration skills and coherent and goal directed thought process with normal thought content (Exhibit 10F). No treating, examining, or reviewing source opined that the claimant has greater limitation in this functional domain (Exhibits 2A, 4A, 5A, 8A, 10F). As such, the evidence of record does not support more than mild limitation in understanding, remembering, or applying information.

As for adapting or managing oneself, the claimant has experienced a moderate limitation. Despite the claimant's significant allegations in relation to his mental impairments, the record is devoid of inpatient psychiatric hospitalizations, participation in a partial hospitalization program, or emergency room visits for psychologically related symptoms or recommendations for more intensive treatment beyond routine outpatient treatment. While the claimant alleges that he is unable to work because he is a danger to himself and others, the claimant's treating physician consistently notes in the treatment records that he is not an imminent threat to himself or others (Exhibits 4F, 16F). Additionally, while the claimant reports seeing and hearing things, mental status examinations are generally devoid of evidence of hallucinations, delusions, or paranoia (Exhibits 9F, 10F, 16F). While mental status examinations and observations reflect variations in mood and affect, they were otherwise generally devoid of ongoing significant clinical abnormalities (Exhibits 3F, 4F, 9F, 10F, 15F, 16F, 17F, 22F).

> Treatment records also reflect that he performs daily activities adequately (Exhibits 16F). No treating, examining, or reviewing source opined that the claimant has greater limitation in this functional domain (Exhibits 2A, 4A, 5A, 8A, 10F). As such, the evidence of record does not support more than mild limitation in understanding, remembering, or applying information.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.
>
> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant is capable of self-sustainment and the record reveals that the claimant is also capable of some adjustment to minor changes in mental demands. The claimant has not required psychiatric hospitalizations or emergency room visits for psychologically related symptoms and mental status examinations fail to show significant clinical abnormalities during the period at issue.

(Tr. 22-25).[4]

Having conducted this Step 3 assessment, between Steps 3 and 4, the ALJ then fashioned the following carefully detailed residual functional capacity ("RFC") for the plaintiff which considered all of Kemmerer's physical and emotional impairments:

---

[4] We note that the ALJ's analysis and recital regarding Kemmerer's abilities in these four realms of emotional functioning appear to contain a scrivener's error, namely references at the conclusion of the analysis of several of these spheres of functioning to a "mild limitation in understanding, remembering, or applying information." In our view this typographical error does not alter the substance of the ALJ's Step 3 analysis or compel a remand.

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant is limited to occupations that require no more than frequent postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling and climbing on ramps and stairs, but must avoid occupations that require climbing on ladders, ropes and scaffolds. The claimant must avoid concentrated prolonged exposure to hazards, such as dangerous machinery and unprotected heights. The claimant is limited to occupations that require the claimant to understand, remember and carry out simple instructions, and make simple work-related decisions. The claimant is limited to occupations that require the claimant to deal with occasional changes in a routine work setting. The claimant is limited to occupations which require no more than occasional interaction with members of the general public. Further, after an initial training period to learn the job, the claimant is limited to occupations which require no more than occasional interaction with supervisors and coworkers.

(Tr. 25).

In fashioning this RFC, the ALJ considered the medical evidence, the expert opinions, and Kemmerer's self-described limitations. On this score, the ALJ explained that there were discrepancies between Kemmerer's testimony and the clinical record regarding the frequency and severity of his symptoms. (Tr. 26-28). The ALJ further found that the medical expert opinion consensus that Kemmerer could perform simple tasks involving light work was persuasive since it was consistent with the clinical history. (Tr. 29-31). The ALJ then found that, while Kemmerer could not return to his past work, there were other jobs in the national

economy he could perform. (Tr. 32-34). Accordingly, the ALJ concluded that Kemmerer had not met the demanding standard prescribed by law for disability and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Kemmerer argues that the ALJ erred both in symptom evaluation and in assessing the medical opinion evidence and should have found the plaintiff *per se* disabled at Step 3. However, finding that substantial evidence supported the ALJ's Step 3 analysis and decision in this case, for the reasons set forth below, we will affirm the decision of the Commissioner.

## III. Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.

Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a

> reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 587 U.S. 97, 102–03, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D.Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review, "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d

607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather, our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based in part upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess the court of appeals considered the question of whether an RFC which limited a claimant to simple tasks adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple

work; and [the claimant]'s activities of daily living, . . . ." Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

**B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the

insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at

*5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate

which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

**C. Legal Benchmarks Governing Step 3 of This Sequential Analysis**

This dichotomy between the Act's deferential standard of review and caselaw's requirement that ALJs sufficiently articulate their findings to permit meaningful judicial review is particularly acute at Step 3 of this disability evaluation process. At Step 3 of this sequential analysis, the ALJ is required to determine whether, singly or in combination, a claimant's ailments and impairments are so severe that they are *per se* disabling and entitle the claimant to benefits. As part of this step three disability evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments, commonly referred to as listings, that are acknowledged as so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; Burnett, 220 F.3d 112, 119.

In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations and case law. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered

disabled *per se* and is awarded benefits. 20 C.F.R. § 416.920(d); Burnett, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, a plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. § 416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

The determination of whether a claimant meets or equals a listing is a medical one. To be found disabled under step three, a claimant must present medical evidence or a medical opinion that his or her impairment meets or equals a listing. An administrative law judge is not required to accept a physician's opinion when that opinion is not supported by the objective medical evidence in the record. Maddox v. Heckler, 619 F. Supp. 930, 935-936 (D.C. Okl. 1984); Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, § 3:22 (2014), *available at* Westlaw SSFEDCT. However, it is the responsibility of the ALJ to identify the relevant listed impairments, because it is "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Burnett, 220 F.3d at 120 n.2.

On this score, however, it is also clearly established that the ALJ's treatment of this issue must go beyond a summary conclusion, since a bare conclusion "is beyond meaningful judicial review." Burnett, 220 F.3d at 119. Thus, case law "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function . . . is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Jones, 364 F.3d at 505. This goal is met when the ALJ's decision, "read as a whole," id., permits a meaningful review of the SLJ's Step 3 analysis. However, when "the ALJ's conclusory statement [at Step 3] is ... beyond meaningful judicial review," a remand is required to adequately articulate the reasons for rejecting the claim at this potentially outcome-determinative stage. Burnett, 220 F.3d at 119.

### D. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were

broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new

regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other:

> medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).
>
> Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-

established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

**E. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms**

The interplay between the deferential substantive standard of review that governs Social Security appeals, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is also illustrated by those cases which consider analysis of a claimant's reported pain. When evaluating lay testimony regarding a claimant's reported degree of pain and disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir.1994) (citing Stewart v. Sec'y of Health, Education and Welfare, 714 F.2d 287, 290 (3d Cir.1983)); see also Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. Ray v. Astrue, 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

> Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano,

> 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc. Sec., 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

McKean v. Colvin, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015)(footnotes omitted). Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings, but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363

(3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled."). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. §404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes, but is not limited to medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and

other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D.Pa. Oct. 24, 2014); Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D.

Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

**F. The ALJ's Decision is Supported by Substantial Evidence.**

In this case, Kemmerer's appeal follows a legally challenging path. By attacking the ALJ's Step 3 determination based upon challenges to the ALJ's evaluation of the severity of his symptoms and the medical opinion evidence, Kemmerer must overcome a doubly daunting standard of review. First, it is well-settled that in order to succeed at Step 3 a plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id. Therefore, on appeal the plaintiff would have to show that the ALJ erred in every aspect of this Step 3 assessment in order to set aside this decision.

Moreover, Kemmerer's challenge to the factual underpinning of this Step 3 analysis encounters a second legal hurdle—the deferential standard of review that applies generally to Social Security appeals. In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is

supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565.

Guided by these legal precepts, we conclude that this challenge to the ALJ's Step 3 determination fails. On this score, the Commissioner's Listing which guides our consideration, Listing 12.05, provides, in part, that in order to meet these criteria for *per se* disability, a claimant must demonstrate extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) Understanding, remembering, or applying information; (2) Interacting with others; (3) Concentration, persistence, or maintaining pace; and (4) Adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Given these listing criteria, this Step 3 listing arguments fails. No medical source found that Kemmerer suffered from either one extreme or two marked impairments in the mental spheres of workplace functioning. Thus, in order to sustain the plaintiff's Step 3 argument, we would have to conclude that all of the opining experts were wrong.

This we cannot do.

First, we find that the expert opinions regarding Kemmerer's emotional limitations were both consistent with one another and supported by substantial evidence in the clinical record. That evidence disclosed that Kemmerer suffered from a number of emotional impairments which fluctuated over time in their severity but were not wholly disabling. Further, Kemmerer's activities of daily living—which included gaming, hobbies, cleaning, cooking, shopping, and gardening—suggested some ability to engage in sustained productive labor. Thus, substantial evidence supported this evaluation of the medical opinion evidence, and in the absence of any countervailing medical opinions indicating that Kemmerer suffered from more severe impairments the ALJ did not err in accepting this medical consensus that the plaintiff could perform some light work involving simple tasks.

Likewise, the ALJ's symptom evaluation was supported by substantial evidence and followed the guiding regulations, which call for an assessment of the plaintiff's subjective complaints in light of the objective clinical evidence. In this case, the ALJ acknowledged Kemmerer's symptoms but found that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 26). This conclusion was grounded upon substantial evidence; that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

While the ALJ did not entirely discount Kemmerer's subjective reports, the ALJ aptly noted that the clinical history and medical expert consensus based upon that clinical record did not support a disabling level of impairment. Further, Kemmerer's suggestion that the ALJ ignored the fluctuating nature of his emotional state and failed to mention the isolated instances where he acknowledged thoughts of self-harm is belied by the ALJ's decision which candidly addressed these issues at length. (Tr. 27-28). Taken as a whole, the ALJ's assessment of Kemmerer's symptoms comports with the requirements of law and draws support from substantial evidence.

At bottom, the plaintiff's attack on this Step 3 evaluation invites us to re-weigh the evidence. This we may not do. See Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations"); see also Gonzalez v. Astrue, 537 F.Supp.2d 644, 657 (D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations omitted)). Rather, our task is simply to determine whether the ALJ's decision is supported by substantial evidence. Finding that this deferential standard of review is met here, we conclude there was no error in the ALJ's Step 3 evaluation.

In closing, while Mr. Kemmerer's circumstances evoke great sympathy and empathy, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case and therefore will affirm the decision of the Commissioner.

## IV. Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: November 20, 2026